UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FATHERS OF ST. CHARLES, et al., | |
| Plaintiffs, | No. 24 C 13197 |
| v. | Judge Thomas M. Durkin |
| U.S. CITIZENSHIP AND IMMIGRATION SERVICES, et al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs assert a variety of claims challenging U.S. Citizenship and Immigration Services' ("USCIS") denial of the individual plaintiffs' Form I-485 Applications to Register Permanent Residence or Adjust Status and USCIS's failure to commence removal proceedings. Defendants move to dismiss the case in its entirety under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. R. 13. For the following reasons, that motion is granted.

**Background**

I.  Statutory and Regulatory Framework

The Immigration and Nationality Act ("INA") sets forth five distinct employment-based visa categories for would-be immigrants, the fourth of which ("EB-4") includes special immigrant religious workers. *See* 8 U.S.C. §§ 1153(b)(1)–(5); *Soc'y of the Divine Word v. USCIS*, 129 F.4th 437, 441 (7th Cir. 2025). Generally, the process for obtaining a special immigrant religious worker visa begins with the employer filing for a temporary R-1 visa, which allows a nonimmigrant worker to

1

temporarily enter and work in the United States. R-1 visas are issued for a limited duration; the maximum period of authorized stay is five years. *See* 8 U.S.C. §§ 1101(a)(15)(R)(i), (ii); 8 C.F.R. § 214.2(r). Temporary R-2 visas may be issued to the spouse and unmarried children of an R-1 visa holder. 8 C.F.R. § 214.2(r)(4)(ii). At the expiration of the R-1 or R-2 visa, a nonimmigrant must leave the United States, unless the worker has sought to extend, change, or adjust status before the authorized stay period expired. *Divine Word*, 129 F.4th at 442. If the R-1 holder fails to timely depart the United States or obtain alternative lawful status, the worker will be in unlawful status and may begin to accrue unlawful presence, which precludes the worker from applying for permanent resident status later. *Id.* (citing *Bultasa Buddhist Temple of Chicago v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017)).

As such, when R-1 visa holders are in the United States, their employer can file a Form I-360, Petition for Special Immigrant on their behalf. *Id.* (citing 8 C.F.R. § 204.5(m)). To qualify for the special immigrant visa, the religious worker must have been engaged in the work for which they are applying for at least two years prior to filing the petition. *See* 8 U.S.C.§ 1101(a)(27)(C)(iii). If the Form I-360 petition is approved, the worker may apply for adjustment of status to that of a lawful permanent resident by filing a Form I-485, Application to Register Permanent Residence or Adjust Status. *Divine Word*, 129 F.4th at 442–43 (citing 8 C.F.R. § 245.2(a)(3)). Section 245(a) of the INA, 8 U.S.C. § 1255, outlines the basic requirements for adjustment of status. *Id.* at 442 n.1. It provides:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his

> discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a).[1]

## II. Factual Background and Procedural History

Plaintiffs include four different religious organizations, their foreign national religious workers, and those workers' family members. R. 1 ¶¶ 10–21. The religious workers and their family members held R-1 or R-2 nonimmigrant status and applied for adjustment of status to become legal permanent residents. *Id.* USCIS denied those applications. *Id.* ¶¶ 45–46, 54–55, 61–64, 67–70. Plaintiffs have not been placed in removal proceedings.

Plaintiffs filed this action on December 24, 2024. Plaintiffs assert nine causes of action: that the adjustment-of-status application denials violated the Religious Freedom Restoration Act of 1993 ("RFRA") and the First Amendment (Counts I and II); that USCIS's refusal to commence removal proceedings (and thus allow Plaintiffs to apply for new employment authorization) and denial of advance parole violates RFRA and the First Amendment (Counts III and IV); that USCIS's failure to apply

---

[1] After the Immigration and Naturalization Service ("INS") ceased to exist as an independent agency within the Department of Justice in March 2003, the authority of the Attorney General and many of the former INS's functions were transferred to the Secretary of the newly created Department of Homeland Security ("DHS"). A subagency of DHS, USCIS, assumed responsibility for the adjudication of adjustment applications. *See* 6 U.S.C. § 271(b); Homeland Security Act of 2002, Pub. L. No. 107-296, 110 Stat. 2135 (Nov. 25, 2002).

3

RFRA, USCIS's policy manual guidance on RFRA, and the exception in 8 U.S.C. § 1255(c)(2) in denying the individual Plaintiffs' adjustment-of-status applications violated the Administrative Procedure Act ("APA") (Counts V and VI); Mandamus Act claims seeking to compel USCIS to apply RFRA in adjudicating their adjustment-of-status applications and to place the individual Plaintiffs in removal proceedings (Counts VII and VIII); and a Declaratory Judgment Act claim to declare that Plaintiffs are entitled to employment and travel authorization during any available administrative or judicial review of Defendants' actions (Count IX). Defendants move to dismiss for lack of subject matter jurisdiction.

## Legal Standard

"A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint[.]" *Bultasa*, 878 F.3d at 573. Where, as here, a defendant brings a facial challenge to subject matter jurisdiction, the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). The burden of establishing subject matter jurisdiction rests with the party asserting it. *Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010).

## Discussion

I.    Denial of Adjustment-of-Status Applications

Defendants first argue that this Court lacks jurisdiction over Plaintiffs' challenges to USCIS's denial of their adjustment-of-status applications. "Section 1252 prescribes the procedure for judicial review of final orders of removal and otherwise strips courts of jurisdiction to review orders of removal and denials of discretionary

4

relief." *Britkovyy v. Mayorkas*, 60 F.4th 1024, 1028 (7th Cir. 2023) (citing 8 U.S.C. § 1252(a)–(b)). The jurisdiction-stripping provision, § 1252(a)(2)(B)(i), provides in relevant part:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
> (i)  any judgment regarding the granting of relief under section . . . 1255 of this title . . . .

8 U.S.C. § 1252(a)(2)(B)(i). Section 1252(a)(2)(B)(i)'s bar "encompass[es] any and all decisions relating to the granting or denying of discretionary relief" under the enumerated provisions, including factual findings. *Patel v. Garland*, 596 U.S. 328, 338–39 (2022). However, Section 1252(a)(2)(D) preserves judicial review "in a narrow set of circumstances," *Britkovyy*, 60 F.4th at 1028, stating: "[n]othing in subparagraph (B) . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D).

Read together, "these provisions provide for judicial review only of legal and constitutional claims and only if those claims are brought in a petition for review from a final order of removal." *Britkovyy*, 60 F.4th at 1028. Likewise, "[b]ecause § 1255, which governs adjustment-of-status applications, is listed in § 1252(a)(2)(B)(i), a noncitizen can receive judicial review of a denial of adjustment of status only through a petition for review from a final order of removal, and even then, only for constitutional claims or questions of law." *Id.*

5

Plaintiffs ask the Court to review USCIS's decisions denying the individual Plaintiffs' adjustment-of-status applications. More specifically, Plaintiffs ask the Court to find those denials unlawful and compel USCIS to approve the applications. But Section 1252(a)(2)(B)(i) precludes judicial review of the denial of the individual Plaintiffs' adjustment-of-status applications, and § 1252(a)(2)(D) does not apply because the individual Plaintiffs have not received final orders of removal. *See Britkovyy*, 60 F.4th at 1028 (court lacked jurisdiction under § 1252(a)(2)(B)(i) to consider plaintiff's challenge to USCIS's denial of his adjustment-of-status application and § 1252(a)(2)(D) did not apply because plaintiff had not received final order of removal); *Bana v. U.S. Citizenship & Immigr. Servs.*, 762 F. Supp. 3d 720, 728–30 (N.D. Ill. 2025) (same).

Plaintiffs make a number of arguments in an effort to avoid this clear statutory language and precedent. First, they argue that § 1252(a)(2)(B)(i) does not preclude the Court from reviewing predicate legal questions going to eligibility for an immigration benefit, even if the ultimate relief is discretionary. This argument is premised on *Wilkinson v. Garland*, 601 U.S. 209 (2024). In that case, an immigration judge determined that a petitioner was statutorily ineligible for cancellation of removal because he did not satisfy the hardship standard. *Id.* at 216. The Supreme Court held that while "§ 1252(a)(2)(B)(i) generally strips courts of jurisdiction to review cancellation-of-removal decisions," which are discretionary, the threshold hardship determination was a "question[] of law" for which § 1252(a)(2)(D) restored judicial review. *Id.* at 217–18, 221. But unlike in *Wilkinson*, the individual Plaintiffs

6

have not been ordered removed, so § 1252(a)(2)(D) does not apply. *See Britkovyy*, 60 F.4th at 1028; *Gupta v. Mayorkas*, No. 24 CV 4572, 2024 WL 4476121, at *2 (N.D. Ill. Oct. 11, 2024) (applying *Britkovyy* to find a lack of jurisdiction to review APA challenge to denial of adjustment-of-status application where plaintiff had not been ordered removed). In addition, § 1252(a)(2)(D), by its terms, restores jurisdiction to the Court of Appeals, not this Court; indeed, in *Wilkinson*, the case was remanded to the Third Circuit for review of the legal question at issue. *See* 601 U.S. at 226; *Wilkinson v. Att'y Gen. United States of Am.*, 131 F.4th 134 (3d Cir. 2025).

Plaintiffs acknowledge that § 1252(a)(2)(D) applies only to petitions for review of final removal orders but say there is a broader, "judicially-created" exemption for review of predicate legal questions, which was neither narrowed nor eliminated by the enactment of § 1252(a)(2)(D). They cite *Morales-Morales v. Ashcroft*, 384 F.3d 418, 421 (7th Cir. 2004), where the Seventh Circuit held—before § 1252(a)(2)(D)'s enactment—that § 1252(a)(2)(B) permitted judicial review of a threshold legal question regarding eligibility for cancellation of removal. The Court explained that § 1252(a)(2)(B) "does not clearly indicate that the exclusion from judicial review is so extreme as to purport to authorize the Attorney General to disregard both the Constitution and the statutory criteria set forth by Congress." *Id.* at 422. But the petitioner in *Morales-Morales* was seeking review of a final order of removal, so the case does not support any exemption beyond the removal order context. Further, consistent with the later-enacted § 1252(a)(2)(D), the case was heard by the Court of Appeals on petition from the Board of Immigration Appeals; nothing in *Morales-*

7

*Morales* suggests that the district court has jurisdiction to consider such a legal question.

Ultimately, *Britkovyy* is clear in its holding that the only way a foreign national can receive judicial review of questions of law in connection with the denial of an adjustment-of-status application is in a petition for review from a final order of removal. 60 F.4th at 1028. And even then, jurisdiction would lie with the Court of Appeals, not this Court. *Id*. *Britkovyy* is binding on this Court and dictates the outcome here.

Plaintiffs contend that *Britkovyy* is inapposite. In Plaintiffs' view, whereas *Britkovyy* involved foreign nationals who had been deemed inadmissible for falsely claiming U.S. citizenship, and were thus ineligible for relief as a threshold matter, this case involves foreign nationals who are not accused of any behavior that would render them inadmissible, and in fact received approval of their Form I-360 petitions. But *Britkovyy*'s holding did not turn on such facts. Instead, the Seventh Circuit interpreted the plain meaning and interplay of the relevant statutory provisions, § 1252(a)(2)(B)(i) and § 1252(a)(2)(D), which apply with equal force in this case.[2]

Along the same lines, Plaintiffs suggest that they are not challenging the denial of their adjustment-of-status applications, but rather seeking to "protect the already-approved forms I-360, which are not in any way discretionary." *See* R. 17 at

---

[2] Plaintiffs also argue that *Britkovyy* is distinguishable because it involved a plaintiff who was already in removal proceedings and did not involve the constitutional concerns implicated here. Because these arguments overlap with Plaintiffs' arguments regarding the commencement of removal proceedings, the Court addresses both arguments in the "Additional Arguments" section.

8

6, 7 ("Defendants make the approved I-360 applications null and void by their refusal to follow the law[.]"). This attempted recharacterization is belied by their complaint. *See, e.g.*, R. 1 at ¶¶ 71, 73 ("USCIS's denial of the applications for adjustment of status in this case violates RFRA [and] the First Amendment."); *id.* ¶¶ 80, 81 ("Because USCIS failed to apply [8 U.S.C. § 1255(c)] [and] RFRA, the denials were arbitrary, capricious, and not substantially supported by law in violation of the Administrative Procedure Act."); *id.* at p. 23 (requesting that the Court "[d]eclare that USCIS's decisions denying the individual plaintiffs' applications for adjustment of status are unlawful and order USCIS to approve their applications."). Moreover, Plaintiffs' suggestion that their Forms I-360 are somehow invalidated or rendered unresolved by USCIS's discretionary denial of their adjustment-of-status applications is devoid of any support.

Thus, this Court lacks jurisdiction to consider Plaintiffs' challenges to the denial of the adjustment-of-status applications.

II. Commencement of Removal Proceedings

Defendants argue that 8 U.S.C. § 1252(g) deprives the Court of jurisdiction over claims regarding the initiation of removal proceedings. "Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion" in the commencement of removal proceedings. *Reno v. Am.-Arab Anti-Discrimination Comm. ("AADC")*, 525 U.S. 471, 485 (1999); *Chapinski v. Ziglar*, 278 F.3d 718, 721 (7th Cir. 2002) (citing *AADC*, 525 U.S. at 485). It states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of

9

> title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

*See* 8 U.S.C. § 1252(g). The Seventh Circuit has made clear that § 1252(g)'s jurisdictional bar covers not only the affirmative decision "to commence proceedings," but also the "decision not to commence removal proceedings." *Chapinski*, 278 F.3d at 721 (citation omitted); *see also Gomez-Chavez v. Perryman*, 308 F.3d 796, 800 (7th Cir. 2002) (§ 1252(g)'s "strict limitations apply not only to the Attorney General's positive actions, but also to his refusals to take action").

Plaintiffs explain that they would like to begin removal proceedings so that they can renew their denied adjustment-of-status applications and apply for new employment authorization, as permitted by regulation. *See* 8 C.F.R. § 245.2(a)(5)(ii); 8 C.F.R. § 274a.12(c)(9). As such, they challenge Defendants' refusal to initiate removal proceedings to date, and ask the Court to place the individual Plaintiffs in removal proceedings and/or to order USCIS to refer their cases to the Executive Office for Immigration Review for removal proceedings. Section 1252(g) plainly prevents the Court from hearing such a challenge or granting the requested relief. *See Koleda v. Jaddou*, No. 23 C 15064, 2024 WL 1677408, at *3 (N.D. Ill. Apr. 18, 2024) (denying request for order directing USCIS to place the plaintiff in removal proceedings so that she can renew her denied application for adjustment of status for lack of jurisdiction under § 1252(g)); *see also Chapinski*, 278 F.3d at 721 (affirming dismissal for lack of

10

jurisdiction under § 1252(g) where the only way to grant plaintiffs' requested relief was to compel the initiation of removal proceedings).

Plaintiffs respond that the denial of their right to renew their applications in removal proceedings violates the doctrine outlined in *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 268 (1954) requiring agencies to follow their own rules and regulations. But neither 8 C.F.R. § 245.2(a)(5)(ii) nor 8 C.F.R. § 274a.12(c)(9) says anything about the initiation of removal proceedings on any particular timeline. Nor does the *Accardi* doctrine override § 1252(g)'s clear jurisdictional bar. *See* 8 U.S.C. § 1252(g) (applying "notwithstanding any other provision of law (statutory or nonstatutory)").

Plaintiffs also raise the presumption of reviewability. The Supreme Court has recognized a "'presumption favoring judicial review of administrative action' when a statutory provision 'is reasonably susceptible to divergent interpretation[.]'" *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (quoting *Kucana v. Holder*, 558 U.S. 233, 251 (2010)) (cleaned up). There must be "'clear and convincing evidence' of congressional intent to preclude judicial review" to overcome the presumption. *Id.* (quoting *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 64 (1993)). But the statutory language must be ambiguous for the presumption to apply, and *Chapinski* indicates that § 1252(g) plainly applies to the decision not to commence removal proceedings. 278 F.3d at 721. As such, the presumption of reviewability is not applicable, and the Court lacks jurisdiction to hear Plaintiffs' claims regarding the failure to initiate removal proceedings.

11

III.   Additional Arguments

Plaintiffs raise two additional arguments about why the nature of this case allows, if not requires, this Court to exercise jurisdiction. First, Plaintiffs urge the Court to exercise jurisdiction because this case implicates Plaintiffs' rights under the First Amendment and RFRA. They cite cases that discuss the breadth of RFRA and the importance of a religious organization's legal right to freely chose its minister. And they describe how the denial of the adjustment-of-status applications and the failure to initiate removal proceedings are causing their religious missions to suffer and chilling their exercise of religion.

But neither the sanctity nor the scope of these rights permits this Court to sidestep the narrow avenue for review of constitutional claims and legal questions set forth in § 1252(a)(2)(D). *See* 8 U.S.C. § 1252(a)(2)(B) (applying "[n]otwithstanding any other provision of law (statutory or nonstatutory) . . . and except as provided in subparagraph (D)"); *cf. Holy Virgin Prot. Cathedral of the Russian Orthodox Church Outside Russia v. Chertoff*, 499 F.3d 658, 662 (7th Cir. 2007) (affirming lack of subject matter jurisdiction under § 1252(a)(2)(B) in case challenging revocation of religious worker's visa under First Amendment, and explaining that plaintiff "may well be placed in removal proceedings, at the conclusion of which she may conceivably seek review in this court (not the district court) [and] would be entitled to raise any constitutional claims she has in her petition for review").

True, the Seventh Circuit has recognized an exception to § 1252(g)'s jurisdictional bar "in rare cases that present substantial constitutional issues or

bizarre miscarriages of justice." *Chapinski*, 273 F.3d at 721 (citation omitted). But it is not at all clear that Plaintiffs' claims would qualify for this exception. *See AADC*, 525 U.S. at 487–88 (§ 1252(g) deprived courts of jurisdiction over claim that plaintiffs were unconstitutionally targeted for deportation, rejecting the argument that a petition for review of a final removal order would "come too late to prevent the 'chilling effect' upon their First Amendment rights"); *Hussain v. Keisler*, 505 F.3d 779, 783 (7th Cir. 2007) (court lacked jurisdiction under § 1252(g) to consider challenge that removal proceedings were unconstitutionally commenced against plaintiff based on his ethnicity and religion). Even if this exception applied, such claims are for the Court of Appeals, not this Court. *Khan v. Holder*, 608 F.3d 325, 328 (7th Cir. 2010) (noting that § 1252(g) "left open the opportunity for aliens . . . to bring constitutional issues directly before the courts of appeals") (citations omitted).

Second, Plaintiffs contend that Defendants' position that there is no jurisdiction over challenges to the denial of their adjustment-of-status applications under §§ 1252(a)(2)(B)(i) and (D), or over USCIS's refusal to commence removal proceedings under § 1252(g) effectively insulates the agency's allegedly unlawful conduct from any judicial review and places Plaintiffs in "perpetual limbo," without any way to vindicate their rights.

The Supreme Court discussed a similar concern in *Patel*. In that case, the Court read § 1252(a)(2)(B)(i) to include not just the grant or denial of relief but of any judgment regarding that ultimate decision. 596 U.S. at 344. The Court acknowledged, in dicta, that such an interpretation might preclude review of all USCIS denials of

13

discretionary relief, as they are made outside of the removal context. *Id.* at 345. But that risk did not warrant a different read of the statute because "foreclosing judicial review unless and until removal proceedings are initiated would be consistent with Congress' choice to reduce procedural protections in the context of discretionary relief" and, ultimately, "policy concerns cannot trump the best interpretation of the statutory text." *Id.* at 346; *see also Britkovyy*, 60 F.4th at 1029 (summarizing the dicta in *Patel*).

The same analysis applies here. The consequence of the jurisdictional limitations crafted by Congress is that Plaintiffs must wait an indeterminate amount of time for Defendants to act in order to raise their constitutional and legal challenges. But that consequence does not allow the Court to disregard the plain language of §§ 1252(a)(2)(B)(i), 1252(a)(2)(D), and 1252(g) or the binding precedent interpreting them. The statutory framework does not, as Plaintiffs contend, deprive them of any recourse or eliminate review altogether. Instead, it leaves a viable, albeit narrow, path for Plaintiffs to assert their constitutional and legal claims. Thus, the Court lacks jurisdiction to hear Plaintiffs' claims regarding the denial of the adjustment-of-status applications and the failure to commence removal proceedings.

IV.  Advance Parole

Lastly, Defendants argue that this Court lacks jurisdiction to consider Plaintiffs' request for advance parole under § 1252(a)(2)(B)(ii). Plaintiffs do not mention advance parole or § 1252(a)(2)(B)(ii) in their response. "It is a longstanding rule that a plaintiff waives his claims when he fails to develop arguments or fails to

14

respond to alleged deficiencies in a motion to dismiss." *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *see also Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

However, even if Plaintiffs had not waived the issue, the Court would find that it lacks jurisdiction to consider this challenge. Section 1252(a)(2)(B)(ii) precludes this Court's review of "any other decision or action . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." The INA grants the Secretary of Homeland Security discretion to temporarily parole, or allow entry into the United States, "any alien applying for admission to the United States" "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A).

In other words, the decision to grant or deny individual Plaintiffs advance parole is statutorily committed to the Secretary's discretion in the relevant subchapter and is thus unreviewable under § 1252(a)(2)(B)(ii). *See Bolante v. Keisler*, 506 F.3d 618, 621 (7th Cir. 2007) ("The Attorney General can and often does release the alien on parole, 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5, but his decision to do so is not judicially reviewable." (citing § 1252(a)(2)(B)(ii))); *Battineni v. Jaddou*, No. 24-CV-302 (CRC), 2025 WL 579814, at *4 (D.D.C. Feb. 21, 2025) (court lacked jurisdiction to consider denial of advance parole under § 1252(a)(2)(B)(ii)). The fact that Plaintiffs challenge the denial of advance parole under the First Amendment and RFRA does not change the Court's analysis. *See Nobles v. Noem*, No. 24 CV 9473, 2025 WL 860364, at *2, 5 (N.D. Ill. Mar. 19, 2025) (concluding that the *Britkovyy*

analysis applies equally to decisions under § 1252(a)(2)(B)(ii)). Therefore, the Court does not have jurisdiction to review Plaintiffs' claims related to advance parole.

## Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss. The dismissal is without prejudice.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: August 1, 2025